MKM:NEM/MCM/ABK
F.#2015R00888

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                    15-CR-628 (S-1) (CBA)

QIAN ZHENG,
KAI HUAN HUANG,
XUE JIANG GAO and
JIYAO JIANG,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM IN SUPPORT OF THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OTHER ACTS

ROBERT L. CAPERS
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Nadia E. Moore
Maria Cruz Melendez
Ameet B. Kabrawala
Assistant U.S. Attorneys
(Of Counsel)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................... 2

BACKGROUND ............................................................................. 2

   I.   The Charges ....................................................................... 2

ARGUMENT ................................................................................. 11

   I.   Evidence of Other Acts Is Admissible to Establish the Racketeering Enterprise  and the Defendants' Membership in the Enterprise ................................. 11

     A.   Legal Standard ............................................................... 11

     B.   Analysis ....................................................................... 14

   II.   Evidence of Other Acts Is Directly Relevant to and Inextricably Intertwined with the Evidence of the Charged Crimes   . .. 15

     A.   Legal Standard ............................................................... 15

     B.   Analysis ....................................................................... 17

   III.   Evidence of the Defendants' Other Acts Is Also Admissible Pursuant to Rule 404(b) 18

     A.   Legal Standard ............................................................... 18

     B.   Analysis ....................................................................... 22

   IV.   The Other Acts Evidence is Admissible Under Rule 403 ...................................... 25

CONCLUSION ............................................................................... 26

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in support of its motion in limine to admit evidence of certain crimes and bad acts not detailed in the Superseding Indictment (the "Indictment"). As set forth below, the evidence described herein should be admitted at trial because it is (i) evidence of the charged racketeering enterprise; (ii) evidence of the charged conspiracies, inextricably intertwined with evidence of the offenses in the Indictment, or necessary to complete the story of the crimes on trial; and/or (iii) admissible pursuant to Federal Rule of Evidence 404(b).[1]

BACKGROUND

I.      The Charges

Defendant Qian Zheng ("Zheng") is charged with racketeering, narcotics trafficking, extortion conspiracies, attempted extortion, operating an illegal gambling business, soliciting, conspiring and attempting to commit assaults in aid or racketeering, and procuring citizenship through fraud. (Counts One, Two, Three, Four, Five, Eight, Nine, Ten Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen). Defendant Xue Jiang Gao ("Jiang Gao") is charged with racketeering and narcotics trafficking. (Counts One, Two and Three). Defendant Kai Huan Huang ("Huang") has been charged with conspiring and attempting to commit extortion. (Counts Ten and Eleven). Defendant Jiyao Jiang ("Jiang") is charged with an extortion conspiracy. (Count Eight).

---

[1]     The government may seek to introduce at trial evidence of other acts, in addition to the evidence set forth herein. Should it seek to do so, the government will provide the defense with notice in accordance with Rule 404(b).

A.     The Enterprise

Zheng, Huang and Jiang Gao have been charged in the Indictment with crimes committed in connection with their membership in the Zheng Organization.  Since at least 2007, Zheng assumed control of various legal and illegal activities in Flushing, Queens and Sunset Park, Brooklyn.   The Zheng Organization had approximately 10-15 identified members, including Xin Lin who has previously been convicted of gang-related crimes.  Zheng controlled various bus routes, illegal gambling dens, and trafficked in ketamine and MDMA. Zheng employed others to engage in acts of extortion and violence to ensure his position of power and the profitability of his businesses.  To defy Zheng and his associates meant to risk their violent retaliation and through this use and threat of violence, Zheng developed a reputation as a powerful and dangerous criminal.

B.     Crimes Alleged in the Indictment

The charges in the Indictment arise from, among other things, the following:

1.     Conspiracy to Distribute and Distribution of Ketamine and MDMA
       (Defendants Zheng and Jiang Gao)

The evidence will show that between approximately January 2007 to June 2015, members of Zheng Organization, including defendants Zheng and Jiang Gao conspired to distribute, and distributed, ketamine.  The evidence will also show that between approximately January 2012 and June 2015, members of the Zheng Organization, including defendant Zheng, conspired to distribute, and distributed, 3,4 methylenedioxy-methamphetamine ("MDMA").

This conduct forms the basis for Racketeering Act One of Count One (Racketeering), Count Two (Ketamine Distribution Conspiracy), Count Three (Ketamine

3

Distribution), Count Four, (MDMA Distribution Conspiracy) and Count Five (MDMA Distribution).  Jiang Gao is charged in Counts One, Two and Three, and Zheng is charged in each of these counts.

2.      The October 2013 to December 2013 Conspiracy to Extort of John Doe 1 (Defendants Zheng and Jiang)

In October 2013, Jiang drove to John Doe 1's restaurant with co-defendant Billy Chen[2] and with a Triad[3] member, to demand money from John Doe 1.   John Doe 1 was not there but Jiang subsequently called John Doe 1 on numerous occasions on the telephone demanding the money.  At Jiang's direction, John Doe 1 paid Jiang $2,000.  In December 2013, Chen and Zheng went to John Doe 1's restaurant to again demand money.  They agreed to have Zheng's underlings return to John Doe 1's restaurant and fire guns into it, or beat or shoot John Doe 1, if John Doe 1 did not pay.

This conduct forms the basis for Racketeering Act Three of Count One (Racketeering), in which Zheng is charged, and Count Eight (Extortion Conspiracy), in which Zheng and Jiang are charged.

3.      January 2014 Operation of an Illegal Gambling Business (Defendant Zheng)

In January 2014, Zheng operated an illegal gambling business in Brooklyn, New York.  Numerous Zheng Organization members were present at this high-stakes gambling game.

---

[2]      On May 9, 2016, Billy Chen pleaded guilty to extortionate collection of credit conspiracy.

[3]      A Triad is a Chinese organized crime organization.

This conduct forms the basis for Racketeering Act Four of Count One (Racketeering) and Count Nine (Illegal Gambling Business), in which Zheng is charged.

4.    The May to June 2015 Conspiracy to Extort John Doe 2 (Defendants Zheng, Jiang Gao and Huang)

On May 28, 2015, Zheng directed Jiang Guo, Huang, and other Zheng Organization members to approach John Doe 2 in his gambling parlor and demand money. When John Doe 2 explained that he did not owe any money, Jiang Guo, Huang, and other Zheng Organization members beat him with their fists, wooden stools, and other objects. The men broke a bone in John Doe 2's hand.

This conduct forms the basis for Racketeering Act Five of Count One (Racketeering), in which defendants Zheng and Jiang Gao are charged, and Count Ten (Extortion Conspiracy), and Count Eleven (Attempted Extortion), in which defendants Zheng, Jiang Gao and Huang are charged.

5.    August 2013 Conspiracy to Assault John Doe 3 and Jane Doe 2 (Defendant Zheng)

In August 2013, Zheng was hired to assault John Doe 3 and Jane Doe 2. Zheng then instructed former Zheng Organization members, who were then cooperating, to slash Jane Doe 2's face and break John Doe 3's leg.

This conduct forms the basis for Count Twelve (Solicitation to Commit Assault in Aid of Racketeering) and Count Thirteen (Attempt to Commit Assault in Aid of Racketeering), in which Zheng is charged.

6.      October 2014 through July 2015 Conspiracy to Assault John Doe 4
        (Defendant Zheng)

In October 2014, co-defendant Guifu Gao[4] approached Zheng and asked him to put Gao in contact with a Zheng Organization member who would be able to assault John Doe 4 for his failure to repay Gao money.  Gao instructed a cooperating witness to cripple John Doe 4, and Zheng instructed the cooperating witness to beat him hard in front of his house.

This conduct forms the basis for Count Fourteen (Solicitation to Commit Assault in Aid of Racketeering), Count Fifteen (Attempt to Commit Assault in Aid of Racketeering) and Count Sixteen (Conspiracy to Commit Assault in Aid of Racketeering), in which Zheng is charged.

7. Unlawful Procurement of Naturalization (Defendant Zheng)

In 2011, Zheng procured United States Citizenship through means of fraud. Namely, he falsely claimed on his citizenship application that he had never committed a crime for which he was not arrested, never sold narcotics, never helped anyone enter the United States illegally, and never received income from illegal gambling.

This conduct forms the basis for Count Seventeen (Unlawful Procurement of Naturalization), in which Zheng is charged.

---

[4]      On September 8, 2016, Guifu Gao pleaded guilty to extortionate collection of credit conspiracy.

8.    <u>Overview of the Government's Evidence of Other Acts</u>

The government anticipates that, in the course of presenting its case-in-chief, it will seek to offer at trial the following categories of evidence of other acts.

A.    <u>Extortions</u>

Cooperating Witness #1 ("CW-1"),[5] a former close criminal associate of defendant Zheng, is expected to testify that Zheng Organization members participated in numerous extortions. For example, CW-1 is expected to testify that in approximately 2007, defendant Zheng instructed him to damage a bus company that was in competition with Zheng's bus company, so that the competing company could not operate, and that CW-1 did so.

CW-1 and Cooperating Witness #2 ("CW-2"),[6] a former close criminal associate of defendant Zheng, and Cooperating Witness #3 ("CW-3"),[7] a former close criminal associate of defendant Zheng are expected to testify that in approximately 2014, defendant Zheng extorted the owner of a hot pot restaurant in Brooklyn. Zheng called CW-1 and told him to show up at the restaurant. CW-1 did so and also brought CW-2. Zheng separately

---

[5]    CW-1 has pleaded guilty to an information charging him with possession with intent to distribute ketamine. He has entered into a cooperation agreement with the government in the hope of receiving leniency at sentencing.

[6]    CW-2 has entered into a non-prosecution agreement with the government with the understanding that if he provides truthful information and testimony, he will not be prosecuted for his purchase and use of ketamine.

[7]    CW-3 has pleaded guilty to an information charging him with extortionate collection of credit. He has entered into a cooperation agreement with the government in the hope of receiving leniency at sentencing.

called CW-3 and told him to come to the restaurant.  When they arrived, they saw numerous cars and people outside of the restaurant.  Zheng told those gathered to standby while he went inside with CW-3.  When Zheng returned, he explained that the matter had been resolved. CW-1, CW-2 and CW-3 understood that Zheng had extorted the owner of the hot pot restaurant.

CW-1 and CW-2 are also expected to testify that on another occasion in approximately August 2013, CW-1 told Zheng that he had gotten into an argument with "Ah Tong," and that a man that worked for "Ah Tong" had shot at CW-2 over the incident.  Zheng explained that CW-1 and CW-2 should have the shooter beaten, and that if "Ah Tong" has money, they should extort him.

CW-1 is expected to testify that in approximately July 2014, he approached Zheng to find out who was competing with a certain bus company.  Zheng confirmed that he operated the competing bus line, but that if he was paid off, he would stop competing.

CW-1 and CW-2 are also expected to testify that in approximately August 2014, Zheng hired them to destroy a brothel.  Zheng explained that the owner had money and that after the brothel was smashed, the owner would send someone to talk to him.

CW-3 is expected to testify that in approximately May 2013, he went to a gambling parlor to collect money that he had loaned to Jane Doe 1.  After those inside the gambling parlor were not sufficiently respectful to CW-3, CW-3 left and called Xin Lin, also known as "Blackie,"[8] to beat one of the men who had disrespected CW-3.  Lin, Huang and

---

[8]     On September 8, 2016, Xin Lin pleaded guilty to Hobbs Act extortion conspiracy.

Jiang Gao and others arrived.  As the victim left the gambling parlor, CW-3 pointed to him and told Lin, Huang and Jiang Gao that they needed to teach him a lesson.  The men then beat and kicked the victim until the police were called.  Jane Doe 1 asked CW-3 to pay the victim's medical bills.  The next day, CW-3 explained what happened to Zheng.  Zheng told CW-3 not to pay the medical bills because it would make Zheng look bad and that if Jane Doe 1 refused to pay the debt, CW-3 should take some of Zheng's underlings and smash the gambling parlor and beat anyone present until the debt was repaid.

CW-3 is also expected to testify that in the end of 2013, CW-3 was again having difficulty collecting a debt that he was owed.  CW-3 went to Zheng for help and Zheng told CW-3 that he could use some of his underlings, including Huang and Jiang Gao, to collect the money.  CW-3, Huang and Jiang Gao went to a gambling parlor where CW-3 expected to find the debtor.  Inside the parlor, CW-3 demanded that the debtor repay the money and Huang slapped the debtor in the face.  CW-3 threatened to send the debtor to the hospital and explained that Huang and Jiang Gao were there as a warning to him.  A few days later, Huang went back to the gambling parlor and accepted payment from the debtor for CW-3.

B.    Assaults and Kidnappings

CW-1 and CW-2 are expected to testify that Zheng Organization members committed numerous assaults.  For instance, CW-2 is expected to testify that in approximately March 2014, Zheng directed him to find a few guys to locate and beat up "Ah Ming." Similarly, CW-1 is expected to testify that (1) in approximately 2009, Zheng instructed him to beat a man on the street in Flushing and that after he did as instructed, Zheng paid him $500; (2) in the summer of 2013, Zheng directed CW-1 to hire "some black guys" to assault an

employee of a Philadelphia-based bus company; and (3) in July 2013, Zheng directed CW-1 to assault a bus passenger, which CW-1 did at Zheng's behest.  CW-1 and CW-2 are also expected to testify that in approximately August 2013, Zheng informed them that a person in Canada owed millions of dollars to a Wenzhounese[9] person and that the Wenzhounese person wanted the money collected and would pay Zheng if he could help.  Zheng explained that if the debtor did not pay the money, CW-1 and CW-2 may have to kidnap him.  Zheng further explained that the Canadian government would not be able to catch them.

      C.    <u>Narcotics Use and Sales and Cigarette Smuggling</u>

The government anticipates presenting evidence that Zheng Organization members frequently bought, sold and used narcotics.  Specifically, CW-1, CW-2 and CW-3 are expected to testify that Zheng sold drugs to earn money and that Zheng Organization members frequently used ketamine when together.  For example, in approximately August 2013, Zheng discussed having marijuana sold by the "black guys" Zheng had directed CW-1 and CW-2 hire to carry out an assault.  Similarly, in May 2015, Zheng asked CW-1 if the "black guys" he had used to carry out assaults would be able to distribute marijuana for him. CW-3 is also expected to testify that Huang began distributing narcotics a few years ago and that he does so frequently at gambling parlors and clubs.  In approximately November 2013, Zheng suggested to CW-1 and others that they begin smuggling cigarettes.

---

   [9]      Wenzhou is a city in China.

## ARGUMENT

All of the "other act" evidence described above is direct proof of the racketeering enterprise alleged in the Indictment and of Zheng's, Huang's and Jiang Gao's membership in that enterprise.  It is also directly relevant to and inextricably intertwined with the evidence of the charged crimes.  As such, it does not constitute "crime[s], wrong[s], or other act[s]" subject to Federal Rule of Evidence 404(b).  Nevertheless, even if it were to constitute such evidence, it is admissible under Rule 404(b) to show knowledge, intent, identity and the absence of mistake, while also providing background of the conspiracy, explaining the relationship of trust between the coconspirators and completing the story of the charged crimes.  Finally, all of the evidence identified above passes Rule 403's balancing test.

I.      Evidence of Other Acts Is Admissible to Establish the Racketeering Enterprise
        and the Defendants' Membership in the Enterprise

        A.      Legal Standard

The Second Circuit has repeatedly held that evidence of "other" or "uncharged" crimes is admissible to establish the existence of the enterprise and conspiracy in prosecutions for racketeering offenses and other conspiracies.  For example, in United States v. Baez, 349 F.3d 90, 93 (2d Cir. 2003). the Second Circuit affirmed a district court's admission of sixteen robberies not alleged in the indictment, finding that "[i]t is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise." Id.  Thus, crimes committed in furtherance of the racketeering enterprise do not fall within the ambit of Rule 404(b).  See United States

v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992) (evidence of uncharged murders admissible to prove relationship and continuity of RICO enterprise's illegal activities).

The Second Circuit's opinion in United States v. Wong, 40 F.3d 1347 (2d Cir. 1994), is particularly instructive.  In Wong, a case in which the defendants were charged with committing crimes in the course of their association with the Green Dragons gang, the Second Circuit held that the district court properly admitted testimony of a shootout between rival gangs not specifically charged in the indictment.  In this regard, the Second Circuit found that "the evidence [of uncharged acts] was admissible to prove the existence and nature of the Green Dragons 'enterprise' and the participation of defendants-appellants in that enterprise, rather than as evidence of other crimes under Rule 404(b)."  Id. at 1378.  The court further held that "this evidence was probative of the existence, organization and nature of the RICO enterprise, a central allegation in the indictment."  Id.  Accordingly, "'the fact that it may also have been probative of a separate uncharged crime is irrelevant.'"  Id. (quoting United States v. Coiro, 922 F.2d 1008, 1016 (2d Cir. 1991)).[10]

Similarly, in United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999), the Second Circuit affirmed the admission of numerous uncharged criminal acts admitted as "enterprise evidence," i.e., to establish the existence of the charged enterprise, including evidence of drug trafficking, possession of weapons, assaults in aid of racketeering, robbery and related acts of violence.  The court held that this evidence was not subject to Rule 404(b).  Id.  Likewise, in United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997), the Second Circuit affirmed the

---

[10]     The court further found that the district court acted well within its discretion in concluding the evidence was admissible under Rules 401 and 403.

district court's decision to admit evidence of uncharged murders as proof of a RICO enterprise and conspiracy, rather that pursuant to Rule 404(b).  Id. ("The district court concluded that the proof of these murders was relevant to show the existence and nature of the enterprise and the conspiracy and that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice.   Such an assessment is reviewable only for abuse of discretion, and we see no abuse of discretion here."  (citations omitted)).  See also United States v. Matera, 489 F.3d 115, 120 (2d Cir. 2007) (upholding the admission of uncharged murders to prove the existence of the Gambino Crime family); United States v. Mejia, 545 F.3d 179, 206-07 (2d Cir. 2008) (upholding the admission of evidence of a prior uncharged shooting because it demonstrated the existence of the racketeering enterprise and the existence of the conspiracy with which the defendants were charged); United States v. Ashburn, 2015 WL 588704, at *14-19 (E.D.N.Y. Feb. 11, 2015) (finding that evidence of uncharged assaults, thefts, robberies, shootings, murders and murder conspiracies was admissible to show charged enterprise's nature and structure).

Evidence of "other" or "uncharged" crimes is particularly relevant in this case, where the defendants are charged with racketeering.  To convict a defendant of racketeering, the government must prove (1) the existence of a criminal enterprise, (2) the enterprise affected interstate commerce, (3) the defendant associated with the enterprise, and (4) the defendant knowingly conducted or participated, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering.  18 U.S.C. § 1962(c).  As the Second Circuit explained "to demonstrate a pattern of racketeering, in the end, it is not the number of predicates proved but, rather, the relationship that they bear to each other or to some external

organizing principle that indicates whether they manifest the <u>continuity required to prove a pattern</u>[.]" <u>United States v. Pizzonia</u>, 577 F.3d 455, 465 (2d Cir. 2009) (emphasis added; citation and internal quotation marks omitted).

Thus, as the Second Circuit explained in <u>United States v. Basciano</u>:

[W]here racketeering is the charge, the jury is entitled to rely not only on evidence of the defendant's own crimes, but also on evidence of the crimes of those with whom he is alleged to have thrown in his lot because the judgment required is not simply what acts the defendant committed at particular moments, but whether those acts were parts of a pattern, i.e., committed as part of [the] defendant[s'] association with a subculture of crime.

599 F.3d 184 at 207 n.17 (2d Cir. 2010) (internal quotation marks and citations omitted).

B.    <u>Analysis</u>

Evidence of the above-described "other" criminal acts is central to proving the existence and nature of the enterprise – the Zheng Organization – and the enterprise's involvement in racketeering activity; the activities, purpose and means of the charged enterprise; that the alleged predicate racketeering acts constitute a "pattern of racketeering activity"; the defendants' respective positions within Zheng Organization; the Zheng Organization's effect on interstate commerce; and the history and relationships between the defendants and cooperating witnesses.  For example:

<u>Financial Enrichment</u>:   Evidence of Zheng Organization members using violence to ensure repayment of debts, extorting business rivals and business owners, planning to participate in a kidnapping for payment, planning to smuggle cigarettes, as well as selling narcotics demonstrates the ways in which the enterprise achieved its purpose of "[e]nriching the leaders, members and associates of the Zheng Organization through" criminal activity.  (Indictment ¶ 4(a).

14

Prestige and Reputation:  Evidence of Zheng Organization members' use of violence to ensure repayment of debts and refusal to compensate victims of the Zheng Organization establishes the way in which the Zheng Organization achieved one of its purposes of "[p]romoting and enhancing the prestige, reputation and augmenting the power, territory and financial profits of the Zheng Organization."  (Indictment ¶ 4(b)).

Preservation of Power Through Violence:  Evidence of the assaults and violent extortions committed by Zheng Organization members in Zheng Organization territory demonstrates some of the key ways in which the enterprise sought to achieve its purposes of "keeping victims and citizens in fear of the Zheng Organization, its leaders, its members and associates."  (Indictment ¶ 4(c)).

Interstate Commerce:  Evidence of the extortion of an interstate bus company, as well as the distribution of narcotics, is also relevant to the government's proof of the effect of the enterprise on interstate commerce.

Evidence of each of the acts described above shows the defendants' commitment to engaging in an ongoing and extensive pattern of using violence and committing crimes to make money.  See Pizzonia, 577 F.3d at 465 ("[T]he threat of continued criminal activity over an open period can be established where discrete predicates can be attributed to a defendant operating as part of a long-term association that exists for a criminal purpose.").  Taken together, these other acts plainly manifest the "continuity required to prove a pattern" that is required to prove the existence of, and the defendants' participation in, the racketeering enterprise and conspiracy.  Id.

II.    Evidence of Other Acts Is Directly Relevant to and Inextricably Intertwined with the Evidence of the Charged Crimes

A.    Legal Standard

It is well settled that, where evidence of "other acts" is inextricably intertwined with evidence of the charged crimes, the Second Circuit has held that such evidence is admissible without regard to Rule 404(b).  See, e.g., United States v. Gonzalez, 110 F.3d 936,

941–42 (2d Cir. 1997); United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994).  In Gonzalez,

for example, the defendants were charged with being felons in possession of firearms.  The

Second Circuit affirmed the admission of evidence at trial of a burglary because it was relevant

to both motive for defendants' possession of the firearms and to provide "crucial background

evidence that gave coherence to the basic sequence of events that occurred on the night" of the

defendants' arrest.  110 F.3d at 942.  In rejecting the defendants' motion to preclude this

evidence pursuant to Rule 404(b), the court held:

> It is well established that "evidence of uncharged criminal
> activity is not considered 'other crimes' evidence under Fed. R.
> Evid. 404(b) if it 'arose out of the same transaction or series of
> transactions as the charged offense, if it [is] inextricably
> intertwined with the evidence regarding the charged offense, or if
> it is necessary to complete the story of the crime [on] trial.'"

Id. (quoting United States v. Towne, 870 F.2d 880, 886 (2d. Cir. 1989) (emphasis added)

(alteration in original)).  Thus, the evidence of the burglary was admitted as relevant under

Rule 401, after a Rule 403 determination that the probative value of the evidence was not

substantially outweighed by the risk of unfair prejudice.)[11]

Furthermore, the Court "may admit evidence of prior acts to inform the jury of

the background of the conspiracy charged, in order to help explain how the illegal relationship

between participants in the crime developed, or to explain the mutual trust that existed between

---

[11]    The court in Gonzalez further noted that "[t]o be relevant, evidence need only
tend to prove the government's case, and evidence that adds context and dimension to the
government's proof of the charges can have that tendency."  110 F.3d at 941.  Accordingly,
"[r]elevant evidence is not confined to that which directly establishes an element of the crime."
Id.; see also Fed. R. Evid. 401, 402.  Indeed, as the Supreme Court has recognized, in analyzing
the admissibility of evidence, the trial court should make its determinations "with an
appreciation of the offering party's need for evidentiary richness and narrative integrity in
presenting a case."  Old Chief v. United States, 519 U.S. 172, 183 (1997).

coconspirators." Rosa, 11 F.3d at 334; see also Pipola, 83 F.3d at 565-66 (explaining that evidence may properly be admitted to provide "background information in a conspiracy case" because it may "help the jury understand the basis for the co-conspirators' relationship of mutual trust"); United States v. Williams, 205 F.3d 23 (2d Cir. 2000); United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case."); United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993) (holding that co-defendants' relationship over a 14-year period, during which stolen property and narcotics crimes were committed, "was properly admitted to explain how the illegal relationship between the two [defendants] developed and to explain why [one defendant] . . . appointed [the other defendant] . . . to a leading position in the Organization"); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992) ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed.").

B.      Analysis

Evidence of many of the other acts described above is "necessary to complete the story of the crime on trial," Carboni, 204 F.3d at 44, because this evidence explains how the enterprise was founded, and how the defendants and their coconspirators operated as members of the Zheng Organization.  For example, the extortions, narcotics sales and assaults

17

by Zheng Organization members demonstrates how the defendants and their coconspirators operated within Zheng Organization and worked to achieve the purposes of the enterprise.

The foregoing evidence is also inextricably intertwined with the government's proof of the racketeering enterprise inasmuch as it helps explain how each defendant came to be a member of the enterprise and his relative role within the enterprise.  Said another way, the evidence is crucial to the government's ability to prove the "evidentiary richness" and "narrative integrity" the Supreme Court described in <u>Old Chief</u> that will allow the jury to understand how the Zheng Organization established a presence in the Flushing and Sunset Park neighborhoods and utilized the means and methods of the enterprise to accomplish its goals.

Similarly, evidence of Huang's participation in other extortions with members of the Zheng Organization prior to the extortion conspiracy with which he is currently charged provides necessary background of his relationship with his co-conspirators and helps to explain "how the illegal relationship between participants in the crime developed."   <u>See</u> <u>Pitre</u>, 960 F.2d at 1119.

III.   <u>Evidence of the Defendants' Other Acts Is Also Admissible Pursuant to Rule 404(b)</u>

In the alternative, the government seeks to admit the evidence described above pursuant to Federal Rule of Evidence 404(b).

A.   <u>Legal Standard</u>

In general, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  While the government "must explain in detail the purposes for which the evidence is sought to be admitted," United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) (citing United States v. O'Connor, 580 F.2d 38, 40 (2d Cir. 1978)), the Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application:  "[w]e have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible." Id.

The Second Circuit has identified three prerequisites for the admission of "other crimes" evidence under Rule 404(b).  First, a trial court must determine whether the evidence is offered for a purpose other than to prove a defendant's bad character or criminal propensity. Second, the trial court must determine whether the evidence is relevant under Rules 401 and 402 of the Federal Rules of Evidence and whether its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.  See Pitre, 960 F.2d at 1119; United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991).  Third, the court must provide an appropriate limiting instruction to the jury, if one is requested.  See Pitre, 960 F.2d at 1119.

Courts have held that one proper purpose for the admission of other acts evidence is to prove a relationship of trust between conspirators in a charged conspiracy, as well as knowledge and intent with regard to the charged crimes.  For example, in Williams, the Second Circuit considered whether the district court, during a trial on cocaine trafficking charges, had properly admitted, pursuant to Rule 404(b), evidence of the defendant's prior criminal dealings with his coconspirators.  205 F.3d at 33-34.  The Second Circuit upheld the admission of evidence of the defendant's involvement in marijuana distribution, credit card

19

fraud and filing false charges of assault with two coconspirators involved in the charged cocaine distribution conspiracy.  Id.  In doing so, the court held that "evidence of [the defendant's] prior criminal conduct with his coconspirators was relevant to 'inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.'"  Id. (citation omitted).

Similarly, in Pipola, the district court ruled, prior to trial, that the government could introduce at the defendant's trial on robbery and related firearms charges evidence of the defendant's involvement in other bad acts with his coconspirators, who later became cooperating witnesses for the government and were expected to testify at trial.  83 F.3d at 565. The Second Circuit affirmed the Court's ruling that evidence of prior (1) loans and debt collections, (2) armed robberies and burglaries, and (3) using and selling stolen counterfeit credit cards, was relevant as background information to make the story of the charged crimes complete and to enable the jury to understand how the illegal relationship between the coconspirators developed.  Id. at 566; see also Rosa, 11 F.3d at 334.

In addition, to the extent that evidence of an uncharged crime includes an inculpatory admission by a cooperating witness who participated in the uncharged crime jointly with a defendant, such evidence is admissible to corroborate the witness's testimony. See United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987); United States v. Mejia-Velez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994).  It is required that the proponent of the evidence demonstrate a close relationship between the proffered evidence and the evidence to be corroborated; thus the corroboration must be direct and the matter significant.  Everett, 825 F.2d at 660.  In Everett, for example, the government had only one significant witness to the

charged crime, whose credibility, because of his past convictions and involvement in the charged crime, was attacked. Id. at 661. The Circuit upheld the admission of corroborating other act evidence because it provided "important" details and corroboration of the charged crime and reinforced the testimony of the government witness. Id.

Finally, evidence of other crimes must also be analyzed under Rule 403, but is admissible so long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged.'" Pitre, 960 F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test. United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee, on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction"); United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (prior cocaine convictions admissible as proof that the defendant was aware that substance in his closet was cocaine; observing that evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice where the evidence does not "involve conduct more inflammatory than the charged crime[s]"). Even where there is a risk of undue prejudice, such risk can be mitigated effectively by a cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered. See Mickens, 926 F.2d at 1329.

B.     Analysis

Here, the government offers evidence of the defendants' participation in uncharged acts not to show propensity, but rather as relevant background to demonstrate how the "illegal relationship" among the defendants and their coconspirators was formed and developed.  Rosa, 11 F.3d at 333-34.  Many of these acts – e.g., crimes committed by the defendants with each other or one of the cooperating witnesses – provide important background of the conspiracy, explain the relationship of trust among coconspirators and enable the jury to understand the complete story of the charged crimes.  This is particularly true given the multi-year criminal associations of some of the cooperating witnesses with the defendants.  The story of how the cooperating witnesses came to know the defendants, commit crimes with them and earn their trust such that they would confide in them about their own crimes – and how the cooperating witnesses came to know and commit crimes with other members of the Zheng Organization who, too, would confide in them about criminal matters regarding the enterprise, including the defendants' crimes – cannot be told without testimony about the defendants' uncharged crimes and other acts.  Testimony and other evidence of these acts will serve to corroborate testimony by the cooperating witnesses that they were close criminal associates with the defendants, and thereby corroborate their testimony regarding the defendants' involvement in the charged crimes.[12]  For example, the government will

---

[12]     The government is also permitted to elicit other acts evidence from a cooperating witness insofar as those acts constitute impeachment material that the witness may be cross-examined about by the defense.  See, e.g., United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) ("[S]ince the witnesses were participants in the events about which they testified, it was appropriate for the prosecution to elicit testimony during direct examination that exposed details damaging to their credibility.  In this manner, the prosecution was able to avoid the appearance that it was concealing impeachment evidence from the jury.").  Thus, for

22

corroborate CW-3's testimony about the May 2013 extortion and assault referenced herein with witness testimony and medical records.

In addition, some of the other acts will tend to prove that the defendants possessed the requisite intent and state of mind during their participation in the racketeering enterprise. See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993).  In light of the uncharged crimes and other acts set forth above, it is less likely that the defendants did not possess the requisite intent and knowledge, or had some other state of mind consistent with innocent association, during their participation in the racketeering enterprise.  See id. at 1182 (holding that evidence that the defendant had previously engaged in narcotics trafficking with his coconspirator was admissible to rebut the defendant's defense of innocent association). Because the defendants' knowledge and intent are elements of the charged offenses, and thus facts of "consequence" at trial, see Fed. R. Evid. 401, the government should be given the opportunity to prove those elements with relevant evidence, including the evidence of the uncharged crimes and other acts.

Furthermore, the evidence of the defendants' other conduct tends to establish their knowledge and intent with respect to the charged crimes and is probative of the absence of mistake, among other things, with respect to the charged racketeering acts.  For example, Huang and Jiang Gao's prior participation in violent extortions to collect debts with Zheng Organization members tends to establish his knowledge and intent with respect to the use of violence and threats of violence, and is thus probative of the absence of mistake with respect to his participation in the extortion of John Doe 2, as charged in Racketeering Act Five and

---

this additional reason, the cooperating witnesses should be permitted to testify about gang activity or other crimes they engaged in with the defendants.

Counts Ten and Eleven.  See Pitre, 960 F.2d at 1120 (evidence of other acts evidence admissible to undercut claim that defendants were present at crime scene without intent to participate in narcotics conspiracy); see also United States v. Klein, 340 F.2d 547, 549 (2d Cir. 1965) (where "the evidence is susceptible of the interpretation that the acts alleged to constitute the crime were innocently performed and the vital issues of knowledge and intent are keenly disputed, it is well within the trial judge's discretion to permit the Government, on a properly limited basis, to introduce evidence of prior similar offenses demonstrating the unlikelihood that the defendant was a mere innocent, unknowing bystander"); United States v. McCallum, 584 F.3d 475, 476 (2d Cir. 2009) (stating that, where defendant fails to indicate that "intent and knowledge would not be disputed," 404(b) evidence showing defendant's intent and knowledge is "admissible during the government's case in chief"); United States v. Tarricone, 996 F.2d 1414, 1421 (2d Cir. 1993) (finding that evidence demonstrating defendant's intent or knowledge is admissible where issues of intent or knowledge may be disputed by defendant at trial).  Similarly, evidence of the uncharged acts of extortions demonstrates the defendants' knowledge of the core money-making purposes of the Zheng Organization and their intent to participate in them.

Accordingly, evidence of uncharged acts of assaults, extortions and narcotics is not being offered to prove the defendants' bad character or criminal propensity; it is relevant because the government must prove that Zheng and Jiang Gao knowingly and intentionally participated in the conduct of the affairs of the enterprise through the pattern of racketeering activity charged in the Indictment, and that Zheng, Jiang Gao and Huang knowingly conspired to commit extortion, and the testimony of the defendants' former criminal associates is a key part of the government's proof.

24

IV.   The Other Acts Evidence is Admissible Under Rule 403

Finally, the probative value of the other acts evidence is not substantially outweighed by its prejudicial effect.  Evidence of other crimes is admissible when offered for a proper purpose through the various types of evidence, including the testimony of cooperating witnesses, so long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged.'"  Pitre, 960 F.2d at 1120 (quoting Zapata, 916 F.2d at 804).  Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is admissible under the Rule 403 balancing test.  See Livoti, 196 F.3d at 326 (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction"); See United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (stating that evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice when the evidence does not "involve conduct more inflammatory than the charged crime[s]").  .

Here, the uncharged criminal acts are either similar in nature or no more sensational than the charged crimes, which include racketeering, assaults in aid of racketeering, narcotics distribution and extortions.  Thus, the probative value of the evidence is not outweighed, much less substantially outweighed, by the risk of unfair prejudice, as the evidence concerns conduct similar to and less inflammatory than that involved in the charged offenses.  In any event, any potential prejudice to the defendants can be effectively mitigated by a cautionary instruction limiting the jury's consideration of the evidence to the purposes for which it is offered.  See, e.g., Mickens, 926 F.2d at 1328-29.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the Court should hold that the evidence described above is admissible at trial.

Dated:        September 26, 2016
              Brooklyn, New York


                              Respectfully submitted,

                              ROBERT L. CAPERS,
                              United States Attorney,
                              Eastern District of New York


                  By:        /s/
                             _____
                             Nadia E. Moore
                             Maria Cruz Melendez
                             Ameet B. Kabrawala
                             Assistant United States Attorneys
                             (718) 254-7000